# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

LYNN STOPNICK                                                                                   PLAINTIFF

v.                                        4:17cv00193-JM-JJV

FAULKNER COUNTY
DETENTION CENTER; *et al.*                                                   DEFENDANTS

# **PROPOSED FINDINGS AND RECOMMENDATIONS**

# **INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **DISPOSITION**

### I. INTRODUCTION

Lynn Stopnick ("Plaintiff"), formerly detained at the Faulkner County Detention Center, brings this action *pro se* and under 42 U.S.C. § 1983. (Doc. No. 2.) She alleges Defendants Scott Huffman and Gary Stewart violated her rights during her incarceration by denying her appropriate medical treatment and subjecting her to unconstitutional conditions of confinement. (*Id*. at 4-5.) Defendants have filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims. (Doc. No. 32.) Plaintiff has not responded, and the time for doing so has passed. After careful review, and for the following reasons, I find the Motion for Summary Judgment should be GRANTED and Plaintiff's Complaint should be DISMISSED.[1]

### II. FACTS

Plaintiff was detained at the Faulkner County Detention Center from February 10, 2017, until March 28, 2017. (Doc. No. 34-1 at 3.) According to her Complaint, she is a transgender female and had been on medication for a little over two years at that time. (Doc. No. 2 at 4.) She

---

[1] Plaintiff's claims against Defendant Faulkner County Detention Center were previously dismissed without prejudice. (Doc. Nos. 5, 13.)

2

alleges she was denied her proper medication during her confinement, causing severe mood and emotional issues, and was denied appropriate mental health services as well. (*Id*.) In addition, she alleges she was not allowed to properly shave her face, had to shower in front of "50+ men," and, despite being housed in a protective custody unit, was visible to and had regular contact with the general population, which included male detainees staring at her while masturbating. (*Id*.) Plaintiff also alleges she was denied a vegetarian diet.[2] (*Id*. at 5.)

According to the Affidavit of Defendant Stewart, the licensed physician contracted by Faulkner County to provide medical treatment to detainees, he first saw Plaintiff on February 17, 2017, for a complaint of hip pain. (Doc. No. 34-2 at 1.) At that time, Plaintiff also requested hormone replacement therapy and an evaluation for sex reassignment surgery. (*Id*.) However, she made no request "for mental health services or treatment of any kind and exhibited no signs or symptoms of clinical depression, anxiety, or any related mental health problem." (*Id*.) Defendant Stewart determined Plaintiff might be suffering from mild osteoarthritis in the hip and prescribed Tylenol. (*Id*. at 2.) Because Plaintiff had chosen not to see a psychologist, Defendant Stewart decided to consult with Plaintiff's physician in California regarding hormone replacement therapy. (*Id*.)

After that consultation, Defendant Stewart "was comfortable with trying to maintain estrogen dominance and trying block testosterone." (*Id*.) However, in the exercise of his medical judgment, he "did not find it safe to place the Plaintiff on Aldactone BID (twice daily)." (*Id*.) According to Defendant Stewart's Affidavit, Aldactone is an additional, high-dose testosterone blocker and is also a diuretic, causing increased urination and potential dehydration. (*Id*.)

---

[2] Plaintiff's claims regarding the denial of adequate access to water and being forced to strip in front of male officers were previously dismissed for failure to exhaust administrative remedies. (Doc. Nos. 22, 25.)

3

Regarding the potential sex reassignment surgery, Plaintiff's California physician confirmed Plaintiff had chosen not to undergo a psychological evaluation. (*Id.*)

Defendant Stewart saw Plaintiff again on March 2, 2017, and prescribed Naproxen for Plaintiff's continuing hip pain. (*Id.* at 2-3.) At this visit, Plaintiff made no complaints about her hormone replacement medications, potential sex reassignment surgery, or "any other transgender issues." (*Id.* at 2.) She again made no request for mental health services and exhibited no signs of mental illness. (*Id.*) Defendant Stewart did not see Plaintiff again during her incarceration. (*Id.* at 3.)

According to the Affidavit of Defendant Huffman, a lieutenant, Faulkner County Detention Center policy does not allow detainees to have access to razors for safety reasons (with the exceptions of kitchen workers and those going to court for a jury trial). (Doc. No. 34-1 at 1, 45.) Defendant Huffman was in the process of obtaining a set of clippers for detainees to use instead, and these came in later in Plaintiff's incarceration. (*Id.* at 1.) However, Plaintiff wanted to use them without a guard, which was also not permitted for safety reasons. (*Id.*)

Defendant Huffman states he offered to let Plaintiff shower nightly in the booking area, but she refused. (*Id.* at 2.) Therefore, like other detainees in protective custody, she was escorted to the restrooms and showers by jail personnel. (*Id.*) Defendant Huffman states the showers have dual privacy partitions and Plaintiff was routinely allowed to shower late at night, after everyone else had showered. (*Id.*)

According to Defendant Huffman, Plaintiff was initially placed in general population because there was no request or indication of a need for protective custody at intake. (*Id.* at 1-2.) But she was moved to protective custody in male housing shortly after intake. (*Id.* at 2.) Defendant Huffman states Plaintiff could not be housed with female detainees because she had male genitalia;

4

therefore, the "only alternative" was protective custody in male housing, which meant she was segregated in a barracks-style housing unit blocked off from other units by floor-to-ceiling chain link fencing. (*Id.*)

Finally, Defendant Huffman states Plaintiff was offered a vegetarian tray, or "peanut butter tray," throughout "most" of her incarceration. (*Id.*) In addition, he states the detention center's menus have been approved for caloric and nutritional sufficiency by a registered dietician. (*Id.*)

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).

Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV. ANALYSIS

### A. Official Capacity Claims

Plaintiff has sued Defendants in both their personal and official capacities. (Doc. No. 2 at 2.) Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)). As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id.* at 166. Thus, Plaintiff's official capacity claims against Defendants are to be treated as claims against Faulkner County. Section 1983 liability against municipalities and other local government units is limited:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690-91. A municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 691. *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

Plaintiff has not identified any official policy or unofficial custom of Faulkner County that caused or contributed to her alleged injuries. She contends the detention center should "change and or update its rules, regulations and or services to include proper care and treatment of

6

transgender persons." (Doc. No. 2 at 2.) However, she does not identify any specific policy or custom that caused a constitutional deprivation, and she does not allege a written policy or pattern of widespread unconstitutional conduct was the moving force behind the violations of which she complains. *See Jane Doe A v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 646 (8th Cir. 1990). Accordingly, Plaintiff's official capacity claims against Defendants should be dismissed.

### B.  Personal Capacity Claims

Defendants contend they are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities. (Doc. No. 33 at 2.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*,

7

533 U.S. 194, 201 (2001).³ Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of her constitutional rights.

    1.    Medication and Mental Health Treatment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.⁴ *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). A prisoner advancing an Eighth Amendment claim based on medical care must, at a minimum, allege "deliberate indifference" to his or her "serious" medical needs. *Id.* at 297. Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. *Id.* at 104-05. However, an inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain." *Id.* at 105.

---

³ Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).

⁴ It appears Plaintiff was a convicted prisoner at the time of the alleged constitutional violations, as she states she was "incarcerated awaiting transport to [the Arkansas Department of Correction] on a parole violation." (Doc. No. 2 at 3.) In any event, the "deliberate indifference" standard has been held to apply to both claims arising under the Eighth Amendment and those brought by pretrial detainees under the Fourteenth Amendment. *Davis v. Hall*, 992 F.2d 151, 152-53 (8th Cir. 1993) (citing *Johnson-El v. Schoemehl*, 878 F.2d 1043 (8th Cir. 1989)).

Defendants contend they were not deliberately indifferent to Plaintiff's medical needs. (Doc. No. 33 at 3.) The evidence submitted in support of their Motion supports this contention. When Plaintiff requested hormone replacement therapy and an evaluation for sex reassignment surgery, Defendant Stewart promptly consulted with her California physician to formulate a plan. According to Defendant Stewart's Affidavit, he and the California physician "agreed to maintain low dose estrogen (female hormone therapy) and low dose testosterone (male hormone) blocking therapy until these issues could be worked out." (Doc. No. 34-2 at 3.) They agreed "it would be in the Plaintiff's best health interests to not completely withdraw him from his supplements as that may cause physiological and mental complications." (*Id.*) However, as previously noted, Defendant Stewart had concerns about an additional, high-dose testosterone blocker, as it was a diuretic and could cause increased urination and potential dehydration. (*Id.* at 2.) Therefore, "Plaintiff's doses were reduced to what was thought to be a safely therapeutic level." (*Id.* at 3.) These observations are corroborated by medical records. (*Id.* at 5-7.) Defendant Stewart's Affidavit makes clear he exercised his medical judgment in reducing the dose of testosterone blocker and did so based on concerns for Plaintiff's health. When Plaintiff saw Defendant Stewart again later in her incarceration, she did not complain about her medications. (*Id.* at 2.)

Plaintiff's allegation amounts to, at most, a disagreement with Defendant Stewart's treatment decisions. A showing of deliberate indifference requires more. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). "[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Defendants have shown Plaintiff received appropriate medical treatment, and Plaintiff's unsupported allegations to the contrary are insufficient at the summary judgment stage. *See Conseco Life Ins. Co. v. Williams*,

9

620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 569 (2000)) ("When the movant makes a prima facie showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

To the extent Plaintiff states a claim for the failure to evaluate her for sex reassignment surgery, the record is clear she had chosen not to see a psychologist for that purpose. (Doc. No. 34-2 at 2.) Regarding her claim for the denial of mental health services, the record demonstrates she never requested such services or otherwise indicated a need for them. (*Id*. at 1-2.) For these reasons, Plaintiff has failed to establish a violation of her constitutional rights concerning medical and mental health treatment, and Defendants are entitled to qualified immunity.

2. Conditions of Confinement

The Constitution "does not mandate comfortable prisons"; it prohibits "inhumane ones." *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show (1) the alleged deprivation is objectively, sufficiently serious, resulting in the denial of the minimal civilized measure of life's necessities, and (2) prison officials were deliberately indifferent to an excessive risk to inmate health or safety, meaning the officials actually knew of and disregarded the risk. *Id*. Thus, Plaintiff must establish both an objective element, which asks whether the deprivation was sufficiently serious, and a subjective element, which asks whether Defendants acted with a sufficiently culpable state of mind. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993) (citing *Wilson*, 501 U.S. 294).

Defendants argue Plaintiff has failed to meet this standard on each of her conditions claims. (Doc. No. 33 at 4-6.) I agree. First, as Defendants have shown, the detention center's policy

limiting access to razors is a safety measure, and the denial of proper shaving equipment is not a denial of the minimal civilized measure of life's necessities. *See Sterling v. Taylor*, Case No. 5:16CV00120-JLH-JTK, 2017 WL 1511296, at 4 (E.D. Ark. Feb. 28, 2017) (inmate's claim that he was not permitted to shave or have his hair cut insufficient to demonstrate cruel and unusual punishment). Conditions of confinement violate the Eighth Amendment when they produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson*, 501 U.S. at 304.

According to Defendant Huffman's Affidavit, Plaintiff was served vegetarian meals for "most" of her incarceration. (Doc. No. 34-1 at 2.) Even assuming she was deprived of vegetarian meals on some occasions, this is insufficient to show a constitutional deprivation. Plaintiff has not identified a religious or medical need for a vegetarian diet. Absent that, the Constitution requires only that a jail diet be "adequate to maintain the health of the inmates." *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980). As noted in Defendant Huffman's Affidavit, the detention center's menus have been approved for caloric and nutritional adequacy by a registered dietician. (Doc. No. 34-1 at 2.) Therefore, Plaintiff cannot demonstrate a constitutional violation based on the failure to provide a fully vegetarian diet. *See LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991) (the mere denial of a requested vegetarian diet is insufficient to establish a cognizable Eighth Amendment claim).

Finally, Defendants' evidence demonstrates Plaintiff was not exposed to detainees in general population and made to shower in front of men, as she alleges. As noted in Defendant Huffman's Affidavit, inmates in protective custody are placed "in a segregated barracks-style housing unit, which is blocked off from other barracks-style housing units by floor-to-ceiling chain link fencing." (Doc. No. 34-1 at 2.) Protective custody inmates are escorted to the restrooms by

jail personnel. (*Id*.) Plaintiff refused Defendant Huffman's offer to shower each night in the booking area, which he says was an option made available to her "[i]n light of [her] circumstances." (*Id*.) Instead, Plaintiff was allowed to shower late at night, after everyone else had showered. (*Id*.) Additionally, the showers have dual privacy partitions. (*Id*.) Therefore, Plaintiff's allegations are unsupported by the record, and she has failed to meet Defendants' proof with her own proof showing a genuine issue of material fact.

Because the facts alleged or shown, construed in the light most favorable to Plaintiff, do not establish a violation of a constitutional or statutory right, Defendants are entitled to qualified immunity on Plaintiff's conditions of confinement claims.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 32) be GRANTED.

2. Plaintiff's remaining claims against Defendants Huffman and Stewart be DISMISSED with prejudice.

3. Plaintiff's Complaint (Doc. No. 2) be DISMISSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations would not be taken in good faith.

DATED this 28th day of December, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE